Filed 3/28/22  P. v. Rhodes CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F081832 |
| Plaintiff and Respondent, | |
| v. | (Stanislaus Super. Ct. No. 1209244) |
| ALVIS VERNON RHODES, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ricardo Cordova, Judge.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

* Before Hill, P. J., Levy, J. and Poochigian, J.

## INTRODUCTION

In 2013, appellant Alvis Vernon Rhodes entered into a negotiated disposition and pleaded guilty to voluntary manslaughter, admitted enhancements and a prior strike conviction, and was sentenced to an aggregate second strike term of 18 years in prison.

In 2020, Rhodes filed a petition in the superior court, in pro. per., for resentencing pursuant to Penal Code[1] section 1170.91, that "obligate[s] a sentencing court to consider a criminal defendant's qualifying service-related conditions as mitigating circumstances in making discretionary sentencing choices." (*People v. Panozo* (2021) 59 Cal.App.5th 825, 831 (*Panozo*).) The superior court denied the petition and found such factors were considered at his sentencing hearing in 2013.

On appeal, Rhodes's appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We affirm.

## FACTS[2]

At 9:30 p.m. on May 17, 2006, officers from the Modesto Police Department responded to a report of a Jeep Cherokee, driven by Rhodes, chasing a man on a bicycle, later identified as Ronald Little.[3]

A witness reported that she saw Rhodes yelling and swearing angrily at Little, a transient homeless man who frequented the area and received food from some of the neighbors. This witness heard Rhodes threaten Little with comments that Little was "going to get it" and Rhodes was going to kill him. The witness yelled at Rhodes, who

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] We grant Rhodes's request, without objection, to take judicial notice of the appellate record and nonpublished opinion in his first appeal, *People v. Rhodes* (Dec. 22, 2014, F068175). (Evid. Code, § 450, § 452, subd. (d), § 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

[3] Given Rhodes's plea in this case, the facts are from this court's prior opinion, "derived from the probation officer's report and also from a suppression motion brought by Rhodes later in the proceedings."

ran into his home and then left in his Jeep with the tires squealing. Rhodes turned the corner heading toward Little. Moments later, this witness heard a loud crash.

Other witnesses saw Rhodes's Jeep follow Little on his bicycle. These witnesses reported that Rhodes tried to hit Little with his vehicle but missed. Rhodes backed onto the sidewalk and again drove toward Little. Little picked up his bicycle as though he was attempting to throw it at the Jeep. Rhodes's Jeep rammed into Little and drove his body into a parked vehicle.

Little was found lying in the middle of the street, in a large pool of blood; he died from his injuries. Rhodes had left his Jeep in the middle of the road; it had major frontend damage.

Rhodes was handcuffed and detained in a patrol vehicle. Rhodes called Little a "mother f[**]ker," and pointed to the area of the street where Little had been. Rhodes spontaneously said he had to do it because Little was attacking him.

**Rhodes's Pretrial Statements**

Detective Brocchini read Rhodes the advisements pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 and conducted an interview. Rhodes said his neighbors loved him because when he caught someone vandalizing or burglarizing, Rhodes would confront them.

Rhodes said he heard voices outside his home, walked outside, and saw Little trespassing on his property. Rhodes yelled at Little to get off his property. Little ran down the street. Rhodes said Little called him a snitch and ran up to him, but Rhodes was not afraid. As Little turned and walked away, Rhodes got into his Jeep because he wanted to find where Little lived to tell the police.

Rhodes said he drove around the neighborhood looking for Little before a neighbor directed Rhodes in the right direction. When Rhodes found Little, he called Rhodes a snitch and said, "F[**]k you." Rhodes said at this point, he was outside his Jeep, so he called 911 and got back into his Jeep to drive away. According to Rhodes,

3.

Little was riding his bicycle and grabbed Rhodes's arm through the open passenger window. Although Rhodes pointed to a place on his arm where he claimed he was injured, no injury could be seen.

Rhodes retold the sequence of events, but this time said he found Little on his property and noticed several screens pried away from the windows. Rhodes confronted Little, Little walked away, and Rhodes followed him. Although Rhodes claimed he had caught burglars in the past, he admitted he had never caught Little stealing from him; his home had never been burglarized; and nothing had been stolen from his property.

Rhodes said he located Little and claimed Little came at him. Rhodes jumped back into his Jeep, backed up, and pulled away. Little followed Rhodes on his bicycle and started grabbing Rhodes's right arm through the open driver's side window. Rhodes was holding his cell phone but dropped it inside his vehicle. Rhodes backed onto a lawn to get away from Little. Little reached into the Jeep and pulled on the steering wheel. Rhodes slammed into the back of a parked vehicle and both airbags deployed. Rhodes did not see what happened to Little. Rhodes said he did not intend to hit Little.

## PROCEDURAL BACKGROUND

On May 22, 2006, the complaint was filed against Rhodes that alleged count 1, first degree premeditated murder, with an enhancement for personal use of a deadly weapon, a truck (§ 12022, subd. (b)), and a prior strike conviction.

On June 15, 2006, the court declared a doubt as to Rhodes's competency, suspended proceedings, and appointed an expert to examine him. On September 26, 2006, the court reviewed the expert reports, found Rhodes was competent to stand trial, and reinstated criminal proceedings.

In August 2009, the court again suspended proceedings and ordered additional evaluations as to Rhodes's competency. On May 27, 2010, the court reviewed the reports, found Rhodes competent to stand trial, and reinstated criminal proceedings.

4.

On May 2, 2011, the information was filed that charged Rhodes with count 1, first degree premeditated murder (§ 187, subd. (a), § 189), with an enhancement for personal use of a deadly weapon, an SUV (§ 12022, subd. (b)) and one prior strike conviction.[4]

**The Plea Hearing**

On June 25, 2013, Judge Cordova convened a hearing on the scheduled first day of trial. Rhodes appeared in court with his attorney.

The court stated the parties had agreed to a negotiated disposition, that Rhodes would plead no contest to voluntary manslaughter in violation of section 192, subdivision (a), admit the personal use of a deadly weapon pursuant to section 12022, subdivision (b), and admit a prior conviction, different from the one alleged in the information, that constituted a prior strike and a prior serious felony enhancement (§ 667, subd. (a)), for a minimum possible sentence of 12 years and a maximum term of 18 years, with the right to request the court to dismiss the prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

The court advised Rhodes of his constitutional rights pursuant to *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122, and Rhodes said he understood and waived his rights. Rhodes also agreed to waive his appellate rights, and stated he had enough time to consult with his attorney, no one made other promises to secure the change of plea, and he understood the nature of the charges against him.

The court noted that Rhodes had waived a preliminary hearing, and the parties stipulated to a factual basis for the plea as follows: On May 17, 2006, Rhodes, while in a

---

[4] Beginning with the filing of the complaint and continuing through the plea hearing, Rhodes had in excess of 14 attorneys represent him over a span of some seven and a half years. In addition, he often represented himself pursuant to *Faretta v. California* (1975) 422 U.S. 806, waived time, filed numerous motions, and the court held lengthy hearings on his pro. per. motions. (See *People v. Rhodes*, *supra*, F068175.)

During one of these hearings in 2011, the parties stipulated to introduce into evidence Rhodes's medical records from the Veteran's Administration.

heated argument with Little, a human being, intentionally drove his SUV into Little and caused Little's death by that means.

Thereafter, Rhodes pleaded no contest to voluntary manslaughter (§ 192, subd. (a)), and admitted that he personally used a deadly weapon, a motor vehicle, in the commission of the offense. He also admitted the prior conviction that constituted a prior strike and a prior serious felony enhancement.

**Request to Dismiss Prior Strike Conviction**

Prior to the sentencing hearing, defense counsel filed a request for the court to dismiss Rhodes's prior strike conviction for several reasons, including the argument that he suffered from PTSD as a result his service in the military. Counsel requested the court place him on probation so he could obtain treatment from the Veterans Administration, and sentence him pursuant to section 1170.9, which permitted the court to impose alternate sentences for veterans who suffer from mental health problems as a result of their military service. Counsel submitted Rhodes's service records in support of the request.

**The Sentencing Hearing**

On September 5, 2013, Judge Cordova held the sentencing hearing. Defense counsel argued the court should dismiss the prior strike conviction because of his mental health issues resulting from his military service:

> "Mr. Rhodes has issues. *We've heard so many perceptions of Mr. Rhodes's issues stemming from his involvement in the United States Military.* Mr. Rhodes – unlike most people with these issues that I personally encounter, because I represent a lot of veterans in my practice, Mr. Rhodes has had the courage to confront his issues. He was staying at a stand-down facility in the Bay Area prior to purchasing his home here in Modesto, *and he has done everything that he can do through the Veterans Administration to confront his issues and overcome his issues.*
>
> "His mental illness is known. That's obvious from the 2 [section] 1368s that have been done on prior occasions. It's obvious from Dr. Stanulus's report. Properly cared for and in view of how Mr. Rhodes has … thrown away this tremendous portion his life, the best years of his

life, by one impetuous act I think shows that Mr. Rhodes is capable of reform. He is capable of not trying to bite off more than he can chew in the future because homeownership was not for Mr. Rhodes. That's clear from [the expert's] report. Given his issues, given his mental illness, he's going to assign an inordinate amount of value to these possessions, which he obviously did.

"But on the other hand, Mr. Rhodes has proven time and again that he's not a bum. He's a hard worker. He's a productive member of society when he is producing…. It's a by-product of his condition, and I would ask the Court to see that and have compassion for Mr. Rhodes and to see that given the range of punishment that's available here and Mr. Rhodes's circumstances, which were informed in the *Romero* decision, and all of the decisions that come after the *Romero* decision. His circumstances should inform the Court's decision and should guide the Court's hand.

"And I respectfully invite the Court to grant that discretion and strike the prior under[section] 1385, which is remote. Recalling that Mr. Rhodes was, as far as the Court system's involved, free from any involvement for years and years prior to this incident, and actively involved in getting himself straight, getting himself to treatment that he recognizes he needs, unlike so many people with common inflictions who don't have the courage to come to that recognition point. *He spent a tremendous part of his life recognizing his needs and trying to get appropriate help through the Veterans Administration. His 70 percent disability informs the Court, 1170.1 informs the Court, and these are circumstances that I ask the Court to consider.*" (Italics added.)

The court denied counsel's request to dismiss the prior strike conviction:

"What I have to look at is what would be appropriate in this situation. Obviously the issue of the vandalism led to the resolution of a manslaughter in this case, and *there were other issues obviously evidenced in the documents involving Mr. Rhodes's situation as documented by the VA records and 70 percent disability rating from the Veterans Administration, which is – in my experience is fairly rare that someone receives such a high rating.*

"But I have to look at the particular facts of this case …. [¶] Mr. Rhodes has had a long criminal history. It appears there was one period where he remained free of any law violation for a little over four years since the 1970s. There's – some of the reports attached to the *Romero* motion discuss a fight or flight mentality, which I think is a dangerous position. *I understand some of that may have been as a result of*

*post traumatic stress syndrome, but there's still issues I'm concerned about in terms of public safety.*" (Italics added.)

The court stated that the parties agreed to a stipulated sentence without probation, "but in light of the violent nature of this offense and the defendant's prior convictions, including a prior strike, probation would not be appropriate in this situation." The court sentenced Rhodes consistent with the plea agreement: the midterm of six years for voluntary manslaughter, doubled to 12 years as the second strike sentence, plus five years for the prior serious felony enhancement and one year for the personal use enhancement, for an aggregate term of 18 years.

**Rhodes's First Appeal**

On December 22, 2014, this court affirmed Rhodes's conviction and sentence, in in an appeal filed pursuant to *People v. Wende, supra*, 25 Cal.3d 436.[5] Rhodes filed his own supplemental brief, and alleged prosecutorial and police misconduct, police concealment of Little's propensity for violence, the trial court's alleged bias and inability to fairly rule on the request to dismiss the prior strike conviction, and ineffective assistance of trial counsel. This court reviewed the contentions, found them meritless, and found there were no reasonably arguable legal or factual issues. (*People v. Rhodes*, *supra*, F068175.)

## SECTIONS 1170.9 & 1170.91

Rhodes requested the court dismiss his prior strike conviction and place him on probation based on section 1170.9. "Section 1170.9 authorizes alternative commitment for eligible military veterans convicted of felonies. Originally enacted in 1982 to address combat veterans who served in Vietnam, the statute required sentencing courts to 'consider whether the defendant was a member of the military forces of the United States who served in combat in Vietnam and who suffers from substance abuse or psychological

---

[5] While Rhodes waived his appellate rights as part of the plea agreement, he filed a notice of appeal and obtained a certificate of probable cause based on the court's denial of his request to dismiss the prior strike conviction.

problems resulting from that service.' [Citation.] If the defendant was such a person, the court had discretion to 'order the defendant committed to the custody of federal correctional officials for incarceration for a term equivalent to that which the defendant would have served in state prison.' [Citation.] This basic framework remained in place when the statute was renumbered and amended in 1983 and did not change until statutory amendments took effect on January 1, 2007." (*Panozo, supra,* 59 Cal.App.5th at p. 832.)

"In 2006, the Legislature amended section 1170.9 to reach combat veterans returning from more recent wars in Iraq and Afghanistan. [Citation.] In extending alternative sentencing to all veterans, the Legislature disclaimed any intent to expand probation eligibility. [Citation.] Instead, it sought 'to ensure that judges are aware that a criminal defendant is a combat veteran with these conditions at the time of sentencing and to be aware of any treatment programs that exist and are appropriate for the person at the time of sentencing if a sentence of probation is appropriate.' [Citation.] Effective January 1, 2007, sentencing courts were required to hold a presentence hearing to determine whether the defendant was a combat veteran experiencing 'post-traumatic stress disorder, substance abuse, or psychological problems as a result of that service.' [Citations.] If a defendant met that criteria, was probation eligible, *and was placed on probation*, the court had discretion to order him or her committed to an appropriate 'local, state, federal, or private nonprofit treatment program for a period not to exceed that which the defendant would have served in state prison or county jail.' [Citation.] This version of the statute remained in effect until January 1, 2011." (*Panozo, supra*, 59 Cal.App.5th at p. 833.)

"Section 1170.9 was amended in 2010 to expand the categories of qualifying mental illnesses and eliminate the requirement of service in combat theater. [Citation.] In 2014, the Legislature modified section 1170.9 to *additionally* require courts to consider a convicted defendant's service-related health condition 'as a factor in favor of granting probation.' [Citation..] Whereas former subdivision (b) of section 1170.9

9.

permitted alternative sentencing if the defendant was probation eligible *and actually placed* on probation [citation], revised subdivision (b) *obligated* a court to consider service-related health factors as a mitigating factor in favor of granting probation. This framework for section 1170.9 remains largely the same today." (*Panozo*, *supra*, 59 Cal.App.5th at p. 834, fns. omitted.)

"When the Legislature amended section 1170.9 in 2014, it also enacted a new statute [section 1170.91] requiring the court to consider a defendant's service-related 'sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems' as a mitigating factor in selecting the appropriate determinate term under section 1170, subdivision (b)." (*Panozo, supra*, 59 Cal.App.5th at p. 834.)

The instant appeal is from the superior court's denial of Rhodes's petition filed pursuant to section 1170.91, enacted in 2014. "Since 2015, California law has required sentencing courts to consider, as mitigating factors weighing in favor of a low-term determinate sentence, any trauma, substance abuse, and mental health problems caused by a defendant's service in the United States military. [Citations.] In 2018, the Legislature amended section 1170.91 to allow those sentenced for a felony conviction before January 1, 2015 to petition for a resentencing hearing at which the court could consider mitigating factors related to military service." (*People v. Estrada* (2020) 58 Cal.App.5th 839, 841.) Section 1170.91 only applies to persons serving determinate terms imposed under section 1170, subdivision (b). (*People v. Estrada,* at pp. 842–843.)

Subdivision (a) of section 1170.91 states: "If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service, the court shall consider the circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170. This consideration does not preclude the court

10.

from considering similar trauma, injury, substance abuse, or mental health problems due to other causes, as evidence or factors in mitigation."

Section 1170.91, subdivision (b)(1) states:

> "A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service *may petition for a recall of sentence*, before the trial court that entered the judgment of conviction in his or her case, *to request resentencing pursuant to subdivision (a)* if the person meets both of the following conditions: [¶] (A) The circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service *was not considered as a factor in mitigation at the time of sentencing.* [¶] (B) The person was sentenced prior to January 1, 2015. This subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015." (Italics added.)

Section 1170.91 further states that if the court that "originally sentenced the person is not available, the presiding judge shall designate another judge to rule on the petition." (§ 1170.91, subd. (b)(2).) Upon receipt of the petition, "the court shall determine, at a public hearing held after not less than 15 days' notice to the prosecution, the defense, and any victim of the offense, whether the person satisfies the criteria in this subdivision." (*Id.* at subd. (b)(3).)

At that hearing, the prosecution shall have an opportunity to be heard on the petitioner's eligibility and suitability for resentencing. If the person satisfies the criteria, the court may, in its discretion, resentence the person following a resentencing hearing. (§ 1170.91, subd. (b)(3).) We review the superior court's sentencing decision under section 1170.91 for an abuse of discretion. (*Panozo, supra*, 59 Cal.App.5th at p. 837.)

### RHODES'S SECTION 1170.91 PETITION

On June 8, 2020, Rhodes filed, in pro. per., a preprinted form entitled "Petition for Resentencing based on Health Conditions Due to Military Service Listed in … Section 1170.91(b)."

11.

Rhodes declared he was currently serving a sentence in prison for his manslaughter conviction; he served in the United States Air Force from January 1 to November 26, 1975; as a result of that service, he may be suffering from mental health problems/bipolar disorder; the court did not consider health conditions resulting from his military service as a factor when it imposed his sentence; and he was sentenced before January 1, 2015.[6]

**The Court's Initial Hearings**

On June 17, 2020, the court appointed counsel to represent Rhodes.

On July 14, 2020, Judge Cordova, who conducted the plea and sentencing hearings in 2013, directed the parties to produce the transcript of the sentencing hearing to determine if there was any discussion of Rhodes's military record at that time.

On July 21, 2020, Judge Cordova held another hearing and stated the transcript of the sentencing hearing showed that he "made a comment in there that based on the document that I reviewed in the sentencing statements that the defendant was suffering either a 70 or 75 percent disability rating, which is relatively high. *I would have considered that in terms of what the appropriate sentence was, so I just want to see if counsel have any other points to bring to my attention.*" (Italics added.) The court set the matter for a further hearing.

**The People's Opposition**

On August 4, 2020, the People filed opposition and asserted the petition should be denied. The People stated the purpose of section 1170.91 was "to ensure at sentencing veterans received consideration for mental health issues that resulted from their service.

---

[6] Section 1170.91's procedures for recall and resentencing have been held not to apply to individuals who were sentenced to a stipulated term pursuant to a plea agreement. (*People v. Brooks* (2020) 58 Cal.App.5th 1099, 1106; *People v. King* (2020) 52 Cal.App.5th 783, 791.) Rhodes was not ineligible on this basis, because he entered into a plea agreement for a minimum possible sentence of 12 years and a maximum term of 18 years, with the right to request the court to dismiss the prior strike conviction pursuant to *Romero*.

[Rhodes's] application for consideration suggests that he did not receive this consideration, however, the Court's Sentencing Transcript and [Rhodes's] mental health review pursuant to … section 1368 reflect otherwise." The People cited the court's statements when it denied his motion to dismiss the prior strike conviction at the 2013 sentencing hearing, as set forth above.

**The Court's Denial of the Petition**

On October 5, 2020, Judge Cordova held a hearing on Rhodes's section 1170.91 petition. Rhodes was not present but represented by counsel. The court asked the parties if they had anything to add beyond the pleadings, and they declined. The court denied Rhodes's petition.

> "The transcript does include a mention of his veteran status when he was sentenced. And my recollection is that was something the People considered in reducing the charge from murder to manslaughter. [¶] And did I comment during the sentencing that his disability rating was relatively high compared to many others that I have seen. [¶] At this time I'm going to deny the defendant's motion because the Court did consider his veteran status prior to sentencing him. The statute does not require that – it just says that the Court must consider that, and I believe that I did."

On October 6, 2020, Rhodes filed a timely notice of appeal of the court's order of October 5, 2020.

## DISCUSSION

As noted above, Rhodes's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that Rhodes was advised he could file his own brief with this court. By letter on February 5, 2021, we invited him to submit additional briefing within 30 days.

On March 4, 2021, this court received a "supplemental brief" from Rhodes, raising several issues related to the pretrial proceedings and his plea agreement, claiming he was factually innocent, and asserting his current appellate attorney was prejudicially ineffective for failing to raise these issues.

On March 29, 2021, this court advised Rhodes that this document was being returned without being filed, and that "[i]n order to properly present the matter to this court, you may prepare a formal request to file an addendum to supplemental brief and brief stating all the facts you wish the court to consider, together with your declaration under penalty of perjury," along with a proof of service.

On July 1, 2021, Rhodes sent a letter to this court, updating his address, stating he had "recently" been released from prison, and requesting "to file a request to file" a supplemental brief.

On July 28, 2021, this court granted Rhodes's "request to file an attachment to his supplemental brief" within 30 days. Rhodes did not do so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.[7]

## DISPOSITION

The judgment is affirmed.

---

[7] To the extent that Rhodes attempted to raise issues arising from the pretrial proceedings and the plea agreement, he is foreclosed from doing so in this appeal from the denial of his section 1170.91 petition. (See, e.g., *In re Reno* (2012) 55 Cal.4th 428, 486.)

As for the section 1170.91 petition, Judge Cordova, who conducted Rhodes's plea and sentencing hearings in 2013, properly denied the petition for resentencing. Judge Cordova expressly considered Rhodes's military service and mental health issues at the 2013 sentencing hearing, held that probation was not appropriate, declined to exercise its discretion to dismiss the prior strike conviction, and imposed the second strike term. When Rhodes filed the section 1170.91 petition, Judge Cordova appointed counsel to represent Rhodes, received opposition from the People, and conducted several hearings on the matter. At the final hearing, Judge Cordova invited argument, and then denied the petition and stated he had considered Rhodes's status as a veteran and his mental health issues at the 2013 sentencing hearing. (Cf. *People v. Bonilla-Bray* (2020) 49 Cal.App.5th 234, 239.)